The first case is from the Patent Office, Shockwave Medical v. Cardiovascular Systems, 2023-1864. Mr. McPhee. And you're going to take seven minutes. Good morning. I'm going to be correct. You can take 15 minutes. I understood you. Seven minutes. May it please the Court. The Board's finding of unpatentability in this case improperly relied upon AAPA as a basis. That's reversible legal error under this Court's recent decision. Well, the first time they did, but not the second, right? Apologies? The first time they did, but not the second time. In fact, in the second time, in the decision on rehearing, if you look at pages two to four of the decision, right there in the table, right up front, they include a table with a heading that lists out References slash Basis, and they list AAPA for every single one of the grounds. How is AAPA defined here? Is it in Patent Admissions plus Healy and Hayes, or how is it defined for purposes of the petition here? It's a good question. So, AAPA, there is a statement in the petition where CSI said, we're going to use AAPA to describe applicant-admitted prior art, figure one from the patent, as well as, and then they used the words, Healy and Hayes. That is the sum and substance of the analysis of Healy and Hayes in the petition. Well, isn't the statement levy as modified by it? That's the key language to determine how AAPA was used here, as modified by it, and is that the basis or not a basis? That is a basis here, and I'll give a few reasons why. You look at the petition. The petition cites AAPA not as evidence of background knowledge, but for every single one of the grounds, they cite AAPA as a reference. But they don't call it a basis, right? They call it a reference. They use it as a basis. They don't call it a basis. They do not call it a basis. The board understood use of AAPA as a reference to be equivalent to a basis, which is why they say reference slash basis. But even more than the labels, you look at how the petition actually uses AAPA. Wait, how do we know that the board thought reference was equivalent to a basis here? I don't think the slash between reference and basis means that's necessarily equivalent because we're defining two different things. Well, the reason I think that, Your Honor, I think it's the only possible understanding because AAPA cannot be a reference. That was this court's decision in Qualcomm 1. So if AAPA is anything under that table, the board had to have understood it to be a basis. And that's consistent with the petition here, where if you look at each one of the challenged claims, every single one of the challenged claims includes at least one element where CSI said in its petition we are relying exclusively on AAPA to satisfy that element. Do you agree that AAPA can satisfy the missing claim limitation? I would put it differently, Your Honor. I would say under this court's decision in Qualcomm 1, background knowledge or general knowledge can satisfy an element, and background knowledge or general knowledge may rely on AAPA when presented properly as part of an expert opinion. So background knowledge, of course, is background knowledge of who? Of the person of ordinary skill in the art. And how do we present evidence of the understanding of the person of ordinary skill in the art? That's with an expert declaration. And that's the way it's always done. Does it have to require an expert declaration? Like when I think of an expert, you could think of someone who is even greater skilled than a person of ordinary skill. Yes, you're correct, Your Honor. But it is the expert who is at least of ordinary skill who is opining on what the level of ordinary skill is. And that's what you have to have to establish background knowledge. And this is not something I'm just saying or as a matter of practice. You can look at the statute itself. 311B says- It sounds as though what you're saying is that the petition and the board could properly have relied on applicants who had prior art, but they used the wrong language to describe what they were doing. Is that your theory? It's part of it, but it's more than that, Your Honor. So before we even get to that question, we look at what evidence did the petition actually present. Did the petition present evidence that this element was within the background knowledge? They didn't. The way you'd have to present that is with an expert declaration. You could maybe have done that. They maybe could have come in and said- So it's the absence of an expert declaration that's the problem? It's the absence of an expert declaration or any other evidence that you could rely on to say this is background knowledge. I don't understand how when you're trying to rely on AAPA, you have to have an expert declaration. The whole point is it's in the patent itself. The reason is this, Your Honor, and this is why I was going to the statute. We know about 311B that says that the basis must be based on prior patents or patent publications. If you go to 312A3 and you look at this, and this court has discussed this in yet a research case, it describes what kind of evidence can you rely on in an IPR proceeding. And there are two provisions there. The first is prior patents, printed publications. That can be the basis. What's the second one? The second one is declarations or affidavits with supporting evidence. Those are the two sources of evidence that you can use in an IPR proceeding. And it's different to say here's an expert who is opining on background knowledge versus I'm going to just skip the expert and go straight to the underlying material. How do we know that? That's the Phillips v. Google case. In your view, what is permissible use of AAPA in a petition? AAPA may be relied upon by an expert, for example, to show background knowledge or to show a motivation to combine or other reasons. What is your best case to say that an expert is required to rely on AAPA in an IPR petition? Well, so I would go to the statute number one. So 35 U.S.C. 312A3, A and B, says you've got to either have a What case? And the Yetta Research case, which we cited in our opening brief, describes exactly that. It says, for example, you can have an expert present opinions based on evidence that is not prior art at all or is not properly presented as a prior art patent or printed publication. But that's saying that you can have an expert. What case says you have to have an expert? To present opinions on background knowledge. To present opinions on AAPA. There's no opinion that I'm aware of that says that you have to have an expert to present opinions on AAPA. But if you look at the two categories of evidence that can be submitted in an IPR, 312A3, AAPA has to fall under one or the other. So either it is a prior art patent or printed publication. It can't be that under Qualcomm 1. It has to fall under the second category. And that is not what happened here. You can read the petition. You look at what they say. You look at the expert evidence they presented. There's no evidence, there's no citation to anything in Healy or Hayes that would support the finding of background knowledge. It simply isn't there. And I'd like to just present one other point before I sit down, which is this issue of motivation to combine. I'd just like to say if you look at Appendix 836, which is a composite image of the various lithotriptor prior art that's present, you'll see that this question of how to combine things is not a trivial one in this case. Every single one of the lithotriptor references that are presented on Appendix 836 has a catheter with a balloon on the end. There was no way to use that with a guide wire without puncturing the balloon. And so whatever CSI has presented to say that these things should be combined, whether it's a catchphrase like design choice or conclusory statements, these are not sufficient to provide substantial evidence of combinability. That's not enough to say that a guide wire was well known. You have to show there was a reason to combine it. Do you agree that it's okay to rely on AAPA plus prior art in the form of pens or printed publications, but not AAPA alone as a basis for the IPR petition? I don't agree with that. That would just be the combination rule that was rejected in Qualcomm 2, which clearly said that's not sufficient. We will save the rest of your time, Mr. Bell. Good morning, Your Honor. May it please the Court. Gabe Bell for the Cross Appellant CSI. In this case, AAPA was properly relied on in the petition and by the Board as evidence of background knowledge. Can you also define what AAPA meant in this particular case? Yes, Your Honor, and this is at page 355 of the appendix. We specifically defined it, so this kind of makes it an unusual case in this respect. The letters AAPA will include the admissions in the patent itself, including figure 1 and column 3, about a typical over-the-wire angioplasty balloon. Went on to say that same configuration is in numerous other prior art references, in particular including Healy and Hayes. The petition then went on two pages later and said it's the most widely used, most common and widely used configuration in the art. And this is what shows that it's used as background knowledge, not as the basis. Because if you're saying it's so pervasive in the art that everyone would know it, and in fact, patent owner itself in this very proceeding at page 599 of the appendix, said the following, this structure, talking about over-the-wire, is a standard structure for all angioplasty balloons, and cited its expert for that proposition. So that's the defining line here between using something as background knowledge properly, and in a case like Qualcomm 2, where it was used for an independent teaching. There it was a power on-off system that was literally the basis of the combination, and another feature was engrafted in. That's not how the petition presented it here, and that's not how the board relied on it. The board recognized that this is a well-known configuration, as evidenced by, and it cited Figure 1, it cited numerous other references, it found that Healy and Hayes were specifically and sufficiently cited in the petition. It said, yes, you didn't point out any particular site, but it's apparent on the face, according to the board, and that's true. If you look at Healy and Hayes, on their face, very first page, they show over-the-wire configurations, for good reason. Everyone knew that this is how you would do it in almost all cases. It would be like claiming a computer with a keyboard, right? Everybody knows it's background knowledge that a computer routinely often comes with a keyboard. And to the court's question about whether an expert declaration is required to show this, it isn't, but there is such a declaration here. We have Jensen, CSI's expert, paragraph 115 of his declaration, which was cited in the petition at page 357, and at paragraph 82 of Jensen's declaration, which is at appendix page 1622, commenting and explaining that over-the-wire systems go back as far as the 1980s, and that's borne out by the record. So an expert declaration isn't required here, and you can certainly rely on other sources besides that, and we know that from Koenigsegg. In Koenigsegg, this court held that the background knowledge provided a missing limitation, and that was the pipelining there. There's kind of an analogy here because pipelining there kind of guided the download process, and here you have a guide wire guiding the insertion process, but there it relied on three different sources of evidence. It relied on an actual prior art reference, the HUA reference, which disclosed pipelining. It relied on an expert declaration, and notably there it also relied on the patent being challenged itself. Towards the end of that opinion, it noted that the patent, and relied on this, that the patent said pipelining was common. Here we have a very similar thing. The patent here says that the over-the-wire configuration was typical. In fact, the most typical. I would submit that if that isn't background knowledge, I'm not sure exactly what would be under the court's case law, and certainly Koenigsegg supports that it can be used and presented in the way that it was here. Counsel, it seems like opposing counsel is trying to elevate form over substance a little bit in terms of the arguments that are being made. Can you respond to that? Yes, I think that's exactly right, Your Honor, and particularly relying on a passing reference in a table in the board's decision. I'll just comment on that as kind of exemplary of their form over substance argument. The board didn't say that AAPA was the basis. In fact, it went on elsewhere in its opinion to specifically say it wasn't treating it as the basis. If there were any confusion from that table, the board dispelled it later in its opinion. I think what you need to do is look at what was dispositive in Qualcomm 2. It's how the petition presents it. So even if you thought the board did somehow refer to it as the basis here, and I don't think that's a fair reading of the board's decision, it's ultimately the petition that governs. There, you had an express admission in the petition, which you don't have here. My friend acknowledged that the petition doesn't do that here. And instead, rather, what you have is the petition presenting it as common and well-known, exactly the sort of presentation you saw in Koenigsegg. It would have been helpful to have cited Healy and Hayes. Yes, so in the petition, Your Honor, we did point out the various exhibits. In the initial list, we say we're relying on the following prior art references. Healy and Hayes were listed in there. And then in defining it, again, at page 355, we said it's exemplary. And I think that's why it shows it's used as background knowledge, not for any one particular teaching plucked out of one prior art that you're combining. You're saying it's so pervasive in the art. For example, Healy and Hayes went on to say numerous other references. And the board at pages 39 to 41 found that it was, in fact, in numerous other references, including Lennox and O'Connor. It may be pervasive in the prior art, but it's also in the claim. It is. It is. And the fact that it's presented as pervasive in the prior art, I think. Which means that aspect of the prior art is important. It certainly means it's claimed. As to its importance, I think we can look at what the patentee itself said in the bottom of column three. Every limitation in a claim is important. Every limitation certainly has to be shown for obviousness. That is undoubtedly correct. They are important to whatever degree the patentee intended it. And I think here, the patentee intended it to be the prior art. It said so in figure one. It said so in the bottom of column three. And ultimately, it presented not just AAPA as the reason to include a guidewire, but all of this other prior art. Healy and Hayes, let alone the admissions by their expert at page 599. Their expert also said, and this is Berger. Does your argument change in any way if AAPA in the petition was just defined as the in-patent admission and did not include Healy and Hayes? I think the way it would present in this petition, it wouldn't change the outcome. Because it was still presented as this is kind of exemplary of everything everybody knows. And again, at page 357, it was termed the most common and the most widely used configuration. We have the patent owner itself saying it's, in fact, in all angioplasty balloons. Again, if that's not background knowledge, which we know from cases like Conic Leaf and Qualcomm 1 and 2, background knowledge can be used for a missing limitation. It can be used for a motivation to the mind. So the use of it certainly isn't a problem. It's just a question of how it was presented by the petition and how it was treated by the board. And we submit that both of those things are entirely appropriate here. Could you turn to claim five before we run out of time? Yes, thank you, Your Honor. I appreciate the prompt. Claim five we think is just as ineligible, excuse me, unpatentable as the other claims. It provides a nominal limitation for where to put the electrodes. And what we think the board went a little bit astray here is in looking at one reference in isolation rather than the combination, and that's the Uchiyama reference. Your expert, as I read the record, said that this is a common design choice that it would have a benefit because it would reach further into the vessel wall, et cetera, et cetera. Right. And if I read the patentee's expert, he really doesn't contest that but says you wouldn't do it because of soft tissue damage. That's exactly right. So there seems to be a dispute about whether because of the risk of soft tissue damage you wouldn't do this between the two experts. Am I correct about that? I think that's right. And the board resolved that dispute in the context of claim one. So the court would recall claim one already required putting the electrodes in the balloon but not in touching relationship with the balloon. So you're in the balloon to be in the liquid to provide the shock wave. That means you're already outside the guidewire limit by definition. So the only question then was does it cause too much harm? And for purposes of claim one, this is at pages 32 to 35, the board rejected that exact argument that it would be too dangerous to put it too close to the balloon or too close to the edge because it would cause harm. So the board resolved that in our favor in claim one. That same reasoning we submit should apply to claim five because that was the only dispute. If you look at the patent owner's response. Can you also respond to the standing argument that was raised by opposing counsel? Of course, Your Honor. And just the site on that where you can see the patent owner's response was appendix 658. That's where they dispute claim five. They just say it's not centered. The board, in fact, said it was centered at page A69. The board found that it was off-center, and the board found elsewhere that it was not too dangerous. Those two findings, we think, show that the board improperly relied just on Uchiyama to reject the argument as to claim five. How about the standing? Yes, Your Honor. Thank you. So standing, we think this aligns very nicely with the GE2 decision. So the GE2 decision made clear that all you need to show is likely activity that's giving rise to a possible infringement suit. So it doesn't have to be an imminent. It doesn't have to be a definite. It's activity, possible infringement suit, and we think both of those are satisfied here. The activity when we submitted the Combrone Declaration at ECF 20-2 explains everything that had happened up until the cross-appeal, and it was substantial. It was a substantial investment. I won't say the number because it's confidential. Had any clinical trials occurred at the time the cross-appeal was filed? No, but it was in the process of talking with FDA. It's a long process, as the court is well aware. We were well into that process of back and forth. Was there a final product design at the time the cross-appeal was filed? It was close to final, and that is, this is all public, it's close to a design freeze at that time, and we later pointed out in our reply that that design freeze had since happened, and that the progress has continued since. Clinical trials are currently ongoing, including in humans. Did Shockway specifically threaten to sue CSI? Yes, I think even more so than other cases. Here's what Shockway said. Quote, any viable IVL device must, end quote, read on Claim 5. This was right after they had managed to sneak Claim 5 through the board, excuse the pejorative language, managed to uphold Claim 5 through the board process. They came right out and said, we're going, anybody with a viable IVL device is going to infringe Claim 5. That's at page CSI Appendix 1. And Shockway later said it will, quote, certainly sue anyone who does IVL. That's CSI Appendix Page 23. And at that time, recall, all they had was Claim 5. So that is a very clear and unmistakable threat that they intend to enforce this through Claim 5. And I see I'm almost out of time. Unless the court has further questions, I'll sit down. You are officially out of time, but you wanted to save two minutes for rebuttal. We'll give you a minute for rebuttal if there's something to rebut. I appreciate the court's consideration. Ms. Queller. Your Honors, and may it please the court. CSI's petition does not suffer from the same issues as the petition in Qualcomm 2, and therefore that case is not dispositive here. Additionally, because the board relied on two prior art references that we've already discussed here today, the Healy and Hayes reference, to establish what was well known in the art, the board's decision may be affirmed on the independent basis of Healy and Hayes without reaching the issue of the proper use of what's classically considered applicant-admitted prior art, which here is Figure 1, just to make sure I'm clarifying Healy and Hayes versus Figure 1. With respect to the language of the petition, in Qualcomm 2, the court there relied on express statements that were unequivocally conceding that applicant-admitted prior art was the basis. The petition here does not have any of those unequivocal or clear statements. They don't use the word basis at all. What has been relied on instead is the board's use of the words basis in one table at the beginning of the final written decision. But that does not align with the language of Qualcomm 2, because under SAS we know that the board cannot rewrite the petition. So we can't assume that CSI was using it as the basis because the board used that language in a table. And even if there was any inference that the board decided that Figure 1 here was applicant-admitted prior art, later they say, at Appendix 31 to 32, AAPA was not the basis. So that inference was later rebutted by the board. But even further, even if applicant-admitted prior art was the basis, that is harmless error because the applicant-admitted prior art was used as an umbrella term by CSI that included Healy and Hayes. Healy and Hayes are printed publications used as evidence of background knowledge. There's no dispute that that is proper under 311. So there's an independent reason to affirm. I do want to make one note with respect to Shockwave Council's reference to 312 that is not so limiting on the type of evidence that may be submitted in an IPR. You can also look at 314 and 316, which also talk about supplemental information and information the board can consider. And the language of 312 itself uses the word including, so it's not limiting. In response to opposing counsel's contention that an expert is required in using AAPA? That is not an argument that I was aware of before today. I don't think it aligns with the language of 312. And to say that an expert has to present the evidence of background knowledge, for example, Healy and Hayes, I don't think that aligns with the statute or has statutory basis there. And then finally, I guess, unless your honors have any questions, I'm happy to address any of the arguments with respect to notice or particularity of Healy and Hayes. But the PTO presents that that is an independent reason to affirm without reaching the use of Figure 1. Thank you, counsel. Mr. McPhee has five minutes plus. The defects here go to both form and substance. If you look at the substantive errors of the board's decision, Appendix 31, relying on the wrong statutory interpretation rejected by Qualcomm 2. In the petition itself, look at it substantively what was presented, not just argument but evidence. There is no evidence presented in the petition regarding Healy and Hayes whatsoever. It's completely absent. It's mentioned in the petition. It's not even mentioned by the expert. I understand CSI to say, well, it doesn't matter if you present a petition saying reference X in view of reference Y or reference X in view of background knowledge based on reference Y. This court has rejected that concept. That's the Konietzsche-Phillips v. Google case where it says, What did they need to do here that they didn't do? At a minimum, they needed to present evidence of background knowledge presented through an expert. So it all turns on whether you have to have an expert. Not just whether to have an expert, but what did you present in your petition? The petition relied directly on AAPA as if it were a reference. It did not rely upon background knowledge. And under Phillips v. Google, that's what it did. So they said in the petition, and you say they didn't, but there's an issue about that. If they said we're relying on this as background knowledge and they had an expert that relied on AAPA, that would be okay? We'd have a different story. That would be okay? I'd have to see what the expert did. But it would be a very different situation than we have here. Under the Phillips v. Google case, it does matter. Did you argue in your brief that you had to have an expert? We pointed to the Yetta research case that showed that it's a difference to have to rely on something. My question is, did you argue in your brief that you had to have an expert? That was the intent. That was the argument that we made. But you didn't actually say it. We made the point that there was no evidence and that they had relied improperly. But you did not argue that they had to have an expert. The argument was that they had improperly relied directly on AAPA. No, no, no. Answer my question. Did you argue that they had to have an expert? We didn't have that exact statement. The point was that they had relied on it as if it were a reference. What is your response to the argument that there's an independent basis for affirmance here and by the fact that AAPA was used as an umbrella term to include the classic AAPA, the in-patent admission, plus Healy and Hayes? So two problems there. Number one, even if you take that umbrella term, you look at what else was under the umbrella. Healy and Hayes, there was no evidence. There was no evidence presented in the petition regarding Healy and Hayes. They literally just said Healy, Hayes. There was no citation to Healy or Hayes. There was no analysis. There was no expert who presented any information on Healy and Hayes. So it's impossible for that petition and the board's decision to have a basis in something that was completely absent from the petition itself. I'd like to go to the cross-appeal, if I may. The question of standing is a fundamental jurisdictional defect, and it was CSI's burden to present evidence of concrete plans and that there was a substantial risk. So why isn't the declaration of Corbonne evidence of concrete plans? It actually shows the opposite of concrete plans. He concedes that design freeze had not yet happened. There could still be variance in the product. And so we don't know at the point that the cross-appeal is filed, we don't know what product we would evaluate for purposes of— So you have to have a specific product that's not subject to change to have standing? I'm not aware of a single case in which this course has found standing based on a product that was subject to change, that was internal, that they were still working on. Well, on the other hand, you're looking at a case that says you have to have a product that's not subject to change. Every case. Platinum Optics, it was not fixed. JTEC case, it wasn't fixed. And moreover, you have the Fisher v. Pagel case, as well as the other ones I just mentioned, that said, It's a problem if the product is a moving target. It's also a problem if you don't present evidence of what the product is. And there was virtually no— You didn't present evidence as to what the product is. I would submit virtually no evidence. Exterior photos of a product, no effort to say how the product related to any of the actual elements of Claim 5. We don't know whether the device uses electrodes or something else. If it does, what material the electrodes are made out of, where the electrodes are positioned, which is key for Claim 5, whether there will be a guide wire lumen. What about the infringement threat that was made or at least described by opposing counsel in terms of what Shockwave said? Yeah, so there were two statements generalized. One was made in response to a question at an investor conference. Neither of those rise to the level of a threat, nor could they have. The one that counsel relied on in particular was made in a general way before CSI had even announced that it was going to be introducing an IVL product. And this Court has never found, in any of its standing cases that I'm aware of that were cited here, has never found that a statement by a patentee can overcome the basic lack of evidence of a concrete product, something that is fixed in some way, and evidence of what that product actually looks like, how it maps to the elements of the product. That seems to be a different question, but in terms of the threat, you agree that there was a sufficient threat? No, I don't believe it was a sufficient threat. I'm saying even if you take that as a threat of some sort, this Court has never found that a threat is sufficient to show standing in the absence of evidence of something concrete and something where evidence is actually presented of how that product lines up. And in the GE2 case, which counsel relies on and says it's the closest, it's interesting. GE2 describes what happened in GE1 where standing was not found to exist. And in GE1, there were threats. There was an understanding among the industry that the patentee was very aggressive, would enforce its portfolio. And yet it wasn't enough because there was no final concrete product. So even the very case they're citing, I think, demonstrates that the evidence, paltry as it is here, is not sufficient to show standing. And that's a fundamental defect. Of course, I'd submit, Your Honor. Your standing has ended here. And Mr. Bell can have a minute on the cross-appeal. Thank you, Your Honor. I don't know how to read those statements other than as a threat and a threat against CSI. It was made after Claim 5 was upheld here. You're talking about the idea that there was a product that was subject to change. The design freeze hadn't happened yet. It was certainly very close. And it then happened imminently after that, as we predicted. So it was essentially final by the time the cross-appeal was filed. And I would like to note, even years before that, during the proceedings on rehearing, here's what Shockwave said. It's, quote, certainly reasonable to infer CSI's product will be covered. So what is our best record evidence we could look at to see that it was essentially final in terms of the product? I know you said it was substantially final, or you used various words. But is there something we could look at in the record? Sure, sure. Cardone Declaration, paragraphs 12 to 15. He was the vice president of research and development, so he would know. He said design freeze was imminent. And we know, ultimately, that it did happen shortly thereafter. In addition, we coordinated with the FDA to get the IDE approved. It's now in clinical trial. So it was clearly right on the cusp and essentially final by that point. And you look at a case like Moderna TX, where the patent owner there said, quote, extensive scope of its patent coverage over virtually all products was a type of statement that would indicate that it was a threat against, you know, a particular party. And, indeed, there was no such threat. Your time has ended. We appreciate both parties and the cases submitted. Thank you, Your Honor.